Casey, Ch. J.,
delivered the opinion of the court:
The claimant prefers his petition to this court to recover the net proceeds of twenty-nine bales of sea-island and fourteen bales of upland cotton, belonging to him, captured at Charleston, South Carolina.
The United States defend upon the following grounds:
1st. That the claimant was an alien at the time of the suit brought, and cannot maintain this claim, unless he brings himself within the proviso to the second section of the Act of 27th July, 1868. (15 Stat. L., p. 243.)
*398 2d. That tbe cotton was purchased in violation of the provisions of the Act July 17, 1862, (12 Stat. L., p. 689,) and therefore void, and vested no property in him.
The claimant is a native-born subject of the kingdom of Hanover. But before the bringing of this suit, in 1867, he had filed his declaration of intentions to become a citizen of the United States. And on the twentieth day of January, A. JD. 1868, he was duly naturalized in the United States District Court, at Charleston, South Carolina. The certificate of the same, properly certified, is presented in the record.
The record further shows that on January 16, 1865, the claimant bought of P. 0. Gaillard & Co., of the city of Charleston, ten bales of sea-island cotton, and proves that he paid for it, and that it was delivered to him at the time. He also presents receipted bills from J. L. Patterson, of the following dates and amounts: ' .
January 19,1865, 6 bales sea-island cotton.
« 25, “ 2 “ « « «
“ 30, “ 3 “ “ “ u-
February 6, “ 1 " " “ u
u ]_3 u 4 a a u u
January 3,1865, of Bufus Barkely, thirteen bales of upland cotton.
In pursuance of the general order of the United States military authorities after their occupation of Charleston, he reported to the proper officer, twenty-nine bales of sea-island and fourteen bales of upland. And the officer in charge of the captured cotton there returns twenty-nine bags of sea-island and nineteen bales of upland, as received from or belonging to the claimant, that came to the possession of the United States.
And we find that the claimant was the bona fide owner of twenty-four bales of sea-island cotton and of thirteen bales of upland cotton, purchased and paid for on and before the thirtieth day of January, A. D. 1865.
And we further find that the five bales of sea-island cotton, purchased by the claimant from J. L. Patterson upon the sixth and thirteenth days of February, A. D. 1865, and while the army under General Sherman was approaching the city of Charleston, which it occupied upon the 17th of the same month, was not purchased in good faith, but in fraud of the rights of *399 tbe United States, and that no right or property thereto vested in the claimant.
We farther find that the cotton belonging to the claimant, after having been seized by the military authorities of the United States, was turned, over to an agent of the Treasury Department, and by him was sold, and the proceeds thereof are now in the Treasury of the United States. And that this claim for the proceeds of the same, was preferred in this Court, within two years after the suppression of the rebellion, under the act of Congress approved March 12,1863.
We further find, that at the commencement of the war of the rebellion the claimant was an alien, being a subject of the Kingdom of Hanover; and that he gave no aid or comfort to the rebellion or to persons engaged therein during the continuance of the same.
We further find that the net proceeds of the claimant’s cotton, after deducting all proper charges and expenses, amounted to. the sum of seven thousand four hundred and eight dollars and ninety-six cents.
Under the facts of this case the plea of alienage cannot avail the defendants. At the time of the passage of the act creating the disabilities, the claimant was already a naturalized citizen, entitled to all the rights and immunities conferred by law upon such; among the rest the right to sue in this court. There is no fair or just interpretation or application of either the words, spirit or intention of the Act of July 27,1868, (15 Stat. L., p. 243,) that takes from him or debars him of such right. The interesting questions therefore raised by the learned discussions of counsel on the hearing of this case do not properly arise in this claim. We therefore forbear to either discuss or express any opinion upon the questions involved, until they shall become necessary and material in the determination of some cause.
There is no proof of the actual status and sentiments of the persons from whom the claimant purchased the cotton. Both by their residence within the insurrectionary territory, as well as by the express provisions of the 3d section of the act of June 25,1868, they are presumed to be hostile to the United States, until the contrary is proved. And this circumstance is set up,by the special counsel for the United States, as showing that their sales of the cotton, the proceeds of which are in controversy in this court, conferred no title on the claimant. These sales *400 having been made after the 23d September, 1862, it is contended are void by the express provisions of the 6th. section of the act of July 17,1862. It is insisted that the property of such persons as did not accept the benefits proffered in that law, by ceasing’ to aid and encourage the rebellion, was ipso facto forfeited, after the sixty days limited in the act, and the President’s proclamation issued thereon the 25th July, 1862; and that the subsequent sale to the claimant was null and void, and conferred no title upon him.
We have heretofore held, in effect, that though the act rendered the property of persistent rebels liable to seizure and condemnation, after the time limited in the act and proclamation, and that all subsequent sales might be avoided at the instance of the United States, by a seizure and condemnation of it, as the property of the original offending owner, in the mode provided in the 7th and 8th sections of the act of July 17,1862; but that the act did not proprio vigore divest the title of the original rebel owner, and vest it in the United States, but required seizure and condemnation to work such transmutation. That the United States, by omitting the proceedings necessary to complete their title, under the forfeiture, and receiving it as the captured or abandoned property of the purchaser, under the act of 1863, have waived their right to the forfeiture under the act of 1862; and that by its seizure as the property of the claimant, and its subsequent sale, without judicial proceedings, they have rendered the necessary proceedings under the act of 1862 impracticable; and that by thus] recognizing the sale and transfer, they have created a trust in favor of such loyal owners as come within the requirements of the act of March 12,1863.
We have had some doubts and division on this question. But that it may be set at rest by the Supreme Court of the United States, we hold —
That though P. C. Gaillard & Co., J. L. Patterson, and Rufus Barkely, from whom the claimant bought the cotton, the proceeds of which are in controversy in this case, were respectively persons who were engaged in giving aid, countenance, and encouragement to the rebellion, before and at the time of their respective transfers to Bulwinkle of such cotton, yet that so far as such sales were bona fide, for a valuable consideration, and without intention to deprive the United States of tffeir *401 right of seizure and condemnation, they transferred the right to the property to the claimant; and on proof of loyalty as required by law he is entitled to recover the proceeds in this case.
We accordingly enter judgment in favor of claimant for the sum of seven thousand four hundred and eight dollars and ninety-six cents, ($7,408 96.)
LoejnXx, J., dissented from so much of the opinion a.s holds that pinchases made by the petitioner were void, because General Sherman’s army was advancing towards Charleston.